**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
Joshua R. Wilner (State Bar No. 353949)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jgavenman@bursor.com
          jwilner@bursor.com
          jglatt@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail:  greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONIKA CHAMBERS, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAROL COLE COMPANY, INC. d/b/a NUFACE,<br><br>Defendant. | Case No.: **'24 CV 1938 DMS MSB**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Onika Chambers ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Carol Cole Company, Inc. d/b/a NuFACE ("Defendant" or "NuFACE"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of the Trinity+ and Trinity Classic Facial Toning Devices and Trinity+ and Trinity Classic Wrinkle Reducer Attachments (the "Devices" or "Products").

2. The Trinity+, Trinity Classic Facial Toning Devices, and Trinity Classic and Trinity+ Wrinkle Reducer attachments use "red-light therapy" and "microcurrent technology" to illicit their purported, but untrue, benefits.

3. Specifically, Defendant represents and warrants that the Devices are red-light therapy devices that are "…lab-tested and FDA-Cleared to increase collagen production, correct discoloration, and reduce inflammation…,"[1] "[r]educe fine lines and wrinkles in just 3 minutes per treatment area,"[2] and "tone[], lift[] & tighten[] for instant & long-term results anytime, anywhere"[3] ("Red Light Benefits"). With regard to its microcurrent technology, Defendant represents and warrants,

---

[1] *Trinity+ Wrinkle Reducer Attachment*, "Light Therapy," NUFACE, https://www.mynuface.com/collections/trinity-smart-devices/products/trinity-plus-wrinkle-reducer-attachment (accessed June 21, 2024).

[2] *Trinity+ Wrinkle Reducer Attachment*, NUFACE, https://www.mynuface.com/collections/trinity-smart-devices/products/trinity-plus-wrinkle-reducer-attachment (last accessed Sept. 16, 2024).

[3] *Trinity+ and Wrinkle Reducer Attachment*, NUFACE, https://www.mynuface.com/collections/trinity-smart-devices/products/trinity-plus-and-wrinkle-reducer-attachment-set (last accessed Sept. 16, 2024) [hereinafter *Trinity +*].

1

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

among other things, that the Devices is "clinically proven"[4] to "enhance[] collagen and elastin production, improve[] circulation, and tighten[] and tone[] the skin[5] ("Microcurrent Benefits").

4.    Unfortunately for consumers, independent testing conducted by Plaintiff, scientific literature, and the opinion of Plaintiff's expert (who is renowned for his research and clinical practice using red light therapy and microcurrent technology), establish that, despite Defendant's representations and warranties, the Devices as instructed: (a) do not produce a sufficient radiant exposure to render the Devices capable of providing the Red Light Benefits;  and (b) is neither "clinically proven" nor capable of providing the Microcurrent Benefits.

5.    Accordingly, Plaintiff brings claims against Defendant individually and on behalf of a Nationwide Class and California Subclass of all others similarly situated for (1) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Express Warranty; (5) Breach of Implied Warranty; and (6) Unjust Enrichment.

## PARTIES

6.    Plaintiff Onika Chambers is a citizen of California residing in Sacramento, California.  On November 2, 2023, Plaintiff purchased the Trinity Classic Wrinkle Reducer Attachment from QVC.com while she was in California. Prior to her purchase, Ms. Chambers reviewed the warranties and representations made by Defendant on the sales page of its website and understood those representations and warranties to mean that the Device could provide the Red Light

---

[4] *Id.*

[5] *The Benefits of Microcurrent Facials*, NUFACE (Mar. 12, 2024), https://www.mynuface.com/blogs/the-current/benefits-of-microcurrent-facial?_pos=4&_psq=microcurrent&_ss=e&_v=1.0.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Benefits and Microcurrent Benefits (collectively, "Skin Claims"). Plaintiff relied on those representations and warranties in choosing the Device over comparable products and skin treatments to provide skin benefits and in choosing to purchase the Product. Even though Plaintiff used the Device as directed, she did not receive the Red Light Benefits or the Microcurrent Benefits that were advertised by Defendant. Plaintiff would not have purchased the Product on the same terms had she known that Defendant's representations and warranties with regard to the Skin Claims were not true. In making her purchase, Plaintiff Chambers paid a substantial price premium due to the false and misleading Skin Claims. However, Plaintiff Chambers did not receive the benefit of her bargain because the Device, in fact, was not capable of providing the Skin Claims.

7.    Plaintiff and the members of the Classes who purchased the Products did so relying on Defendant's claims that the Devices provided the warranted skin benefits. Plaintiff and the members of the Classes would not have purchased the Products, or would not have paid as much to purchase them, had they known that they were, in fact, not capable of providing the Skin Claims. Plaintiff and the members of the Classes thus suffered monetary damages as a result of Defendant's false and deceptive representations and omissions.

8.    Defendant Carol Cole Company, Inc. is a California corporation with its principal place of business in Vista, California. Carol Cole Company, Inc. manufactures, sells, markets, and/or distributes LED therapy and Microcurrent products. Accordingly, the actions and practices giving rise to this claim of action were developed in and emanated from Carol Cole Company, Inc. Carol Cole Company, Inc. uses the same trade dress and marketing claims for sales directly through the NuFace website and third-party sellers like Amazon, Sephora, and Nordstrom.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

# JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10.     This Court has general personal jurisdiction over Defendant because Defendant is at home in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

# FACTUAL ALLEGATIONS

## A.      Background on Red Light Therapy Devices

12.     Red light therapy is a type of LED light therapy.  "LED" stands for "light-emitting diode," a semiconductor device that emits light when an electric current passes through it.[6]

13.     LED light therapy works by repetitively exposing your skin to low levels of LED light for a certain amount of time.  Red-light therapy devices offer consumers an easy way to expose facial skin to LED light, as consumers simply must power on the device and run it over their skin for a certain amount of time.

14.     The use of LED lighting on cell tissue dates back to the 1990s when NASA began studying LED light's ability to help wounded astronauts grow cells and tissue to stimulate healing.[7]

---

[6] *See Learn About LED Lighting*, ENERGY STAR, https://www.energystar.gov/products/light_bulbs/learn-about-led-lighting (last visited Aug. 20, 2024).

[7] *LED Light* Therapy, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/treatments/22146-led-light-therapy (last accessed Sept. 23, 2024).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

15.    Today, LED therapy has been appropriated for, among other uses, skin therapy in consumer products.  In fact, at home anti-aging and acne treating LED light therapy device sales are a lucrative business in the United States.  The U.S. LED facemask market in 2020 was estimated to be worth $70.6 million and is expected to grow by almost 12% by 2030.[8]

16.    Though often referred to generally as Red-Light Therapy devices, LED therapy products offer different light color settings, which impact skin differently.

17.    Based on specific technical parameters and usage instructions, LED therapy devices are designed with varying degrees of success to treat some skin conditions including eczema, hair loss, acne, psoriasis, spotting, rosacea, sun damage, wounds, and wrinkles.[9]

18.    Although there are many color varieties of LED therapy devices, "[t]he red … LED segment is anticipated to register the fastest [compound annual growth rate]" in the LED light therapy industry.[10]

19.    While LED light therapy is commonly used by dermatologists and estheticians with use of commercial products, at-home devices are typically weaker than professional equipment, and thus don't produce dramatic anti-aging or acne reducing results.[11]

---

[8] *LED Light Face Mask Market Size, Share & Trends Analysis Report By Type (Red & Blue LED, Near Infrared LED, Amber LED), By Application (Anti-aging, Acne Treatment), By Distribution Channel, By Region, And Segment Forecasts, 2020-2030*, GRAND VIEW RSCH., https://www.grandviewresearch.com/industry-analysis/led-light-face-mask-report (last accessed Aug. 20, 2024).

[9] CLEVELAND CLINIC, *supra* note 7.

[10] *LED Light Face Mask Market Size, Share & Trends Analysis Report By Type (Red & Blue LED, Near Infrared LED, Amber LED), By Application (Anti-aging, Acne Treatment), By Distribution Channel, By Region, And Segment Forecasts, 2020-2030*, GRAND VIEW RSCH.,  https://www.grandviewresearch.com/industry-analysis/led-light-face-mask-report (last accessed Aug. 20, 2024).

[11] CLEVELAND CLINIC, *supra* note 7.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

20.     In fact, with LED masks and other portable devices [such as Defendant's], [the user] likely won't see dramatic anti-aging or acne-reducing results.  [The user] *might* experience subtle improvements in [their] skin's appearance, though."[12]

21.     Moreover, the efficacy of LED light devices in general remains questionable as demonstrated by the split in researchers' conclusions.[13]  As explained by Harvard Medical School, "[t]here is some evidence they work, but it's far from conclusive."[14]

22.     Unfortunately for consumers, the already reduced chance of seeing their paid-for skin rejuvenation benefits advertised by Defendant's at-home Devices, are dashed by the fact that the Products do not produce the radiant exposure output necessary to elicit the warranted skin benefits.

**B.     Background on Microcurrent Devices**

23.     Microcurrent technology is a non-invasive therapy that uses low-level electrical currents, typically in the microampere range (millionths of an ampere), to stimulate the skin and facial muscles. The technology is based on the concept that

---

[12] *Id.*

[13] *Compare* Anna Mae Scott et al., *Blue Light Therapy for Acne Vulgaris: A Systematic Review and Meta-Analysis*, 17 ANNALS FAM. MED. 545 (2019), https://www.annfammed.org/content/17/6/545 (expressing skepticism after reviewing 14 separate blue-light therapy trials) *with* Marc Cohen et al., *Home-based Devices In Dermatology: A Systematic Review of Safety and Efficacy*, 314 ARCHIVES OF DERMATOLOGICAL RSCH. 239 (2021), https://link.springer.com/article/10.1007/s00403-021-02231-0 (recommending blue light and red-light treatment for acne at power densities "of 6-40 mW/cm$^2$ and 8-80 mW/cm$^2$, respectively.").

[14] Harvard Health Publishing, *LED Lights: Are they a Cure for Your Skin Woes?*, HARV. MED. SCHOOL (Oct. 1, 2019), https://www.health.harvard.edu/diseases-and-conditions/led-lights-are-they-a-cure-for-your-skin-woes.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

low-intensity electrical stimulation can mimic the body's natural electrical currents, promoting cell activity, tissue repair, and muscle toning.[15]

24.    Professionally, microcurrent therapy is used in spas, dermatology clinics, and physical therapy centers. Licensed aestheticians often incorporate it into facial treatments, using specialized equipment that can adjust the intensity of the current to suit different skin types and concerns. In the medical field, physical therapists may employ microcurrent devices to treat muscle pain and inflammation, as well as to aid in injury recovery by stimulating muscle activity and promoting tissue repair. Professional-grade machines often feature higher-intensity settings compared to at-home devices, allowing for deeper penetration of the electrical currents.[16]

25.    At-home microcurrent devices are increasingly popular for personal use. These handheld devices offer a more convenient, accessible way for individuals to benefit from microcurrent therapy without visiting a clinic or spa. They are marketed primarily for anti-aging skincare, designed to tighten and lift the skin while reducing fine lines. The devices usually come with pre-set programs and lower current intensity to ensure safety for at-home users.[17]

26.    While at-home microcurrent devices are convenient, the strength of the current in at-home devices is much lower than what is used in professional treatments, meaning the results are often slower and less pronounced. Users may

---

[15] *See, e.g.*, Pengzhi Bu et al., *Development of Home Beauty Devices for Facial Rejuvenation: Establishment of Efficacy Evaluation System*, NAT'L LIBR. OF MED. (Mar 2024), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10929553/.

[16] *See, e.g.*, Zawn Villines, *Microcurrent facial: Benefits, risks, and results*, MEDICAL NEWS TODAY, (April 5, 2022), https://www.medicalnewstoday.com/articles/hifu-facial#what-is-it.

[17] *See, e.g.*, Kim Tomlinson, *The Evolution of Microcurrent Therapy*, ART OF SKINCARE, (Apr. 4, 2023), https://artofskincare.com/blogs/learn/the-evolution-of-microcurrent-therapy?srsltid=AfmBOorIIRY55bKkUh2rWwY_iQc52lqtMLAjGZh8gAtznCymdeHgU7TM.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

need to apply the devices consistently over a longer period to see any noticeable improvements, and the effects may not be as long-lasting.[18]

27.    More significantly, scientific research on Devices like those sold by Defendant indicate that users may see only modest improvements in skin texture and firmness, but these changes are often mild and temporary.[19]

### 1.    The Anti-Aging Industry

28.    Red light therapy and microcurrent technology are part of the so-called "anti-aging" industry; a multi-billion dollar cosmetic and skin care market, mainly targeted at women, dedicated to providing methods to maintain youth.[20]  The name itself connotes a negative stance and sentiment around aging, a natural human process that has become medicalized and pathologized in recent decades, facilitated by technological advances in anti-aging approaches.  The social preoccupation and significance of anti-aging is evidence in the rise of cosmetic procedures in adults over a certain age.  Indeed, as of 2018, 84% of adults who underwent minimally invasive cosmetic procedures and 81% of adults who underwent any cosmetic surgery were aged 35 or older.[21]

29.    Individuals, especially women, are inundated with social messaging through popular culture, social media, and advertisements perpetuating the stigma

---

[18] MEDICAL NEWS TODAY, *supra* note 16.

[19] Shilpa Jain, *Effect of microcurrent facial muscle toning on fine wrinkles & firmness of face*, RESEARCHGATE, (March 2012), https://www.researchgate.net/publication/353756972_Effect_of_microcurrent_facial_muscle_toning_on_fine_wrinkles_firmness_of_face.

[20] Emily Stewart, How the Anti-Aging Industry Turns You into a Customer for Life, Vox (July 28, 2022), https://www.vox.com/the-goods/2022/7/28/23219258/anti-aging-cream-expensive-scam.

[21] Rebecca Pearl & Ivona Percec, *Ageism and Health in Patients Undergoing Cosmetic Procedures*, 39 AESTHETIC SURGERY J. NP288, NP288—NP289 (2018), https://academic.oup.com/asj/article/39/7/NP288/5139659.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

around aging and elevating youth as the ideal beauty standard.[22]  The target age for anti-aging products for women starts at around 25.[23]

30.    Everlasting youth is the ultimate, though unattainable, goal in the anti-aging industry, making it the perfect marketing strategy.[24]  The strategy has proven effective: a 2021 survey found that women spend about $225,000 on physical appearance in a lifetime, a quarter of which goes toward the face.[25]

**C.    Defendant's Devices**

31.    Defendant manufactures, markets, and sells a number of facial toning devices.  The products at issue are the Trinity Classic and Trinity+ Facial Toning Devices and their respective Red-Light Therapy Attachments.



***Figure 1: Trinity+ and Red-Light Attachment*** [26]

---

[22] Emily Stewart, *supra* note 20.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Trinity+*, *supra* note 3.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED



***Figure 2: Trinity Classic and Red-Light Attachment*** [27]

32.    Defendant markets and sells the Devices in multiple distribution channels including, but not limited to, the NuFACE website, Amazon, Sephora, and Nordstrom.

**1.    <u>Each Version of the Product is Substantially Similar</u>**

33.    These devices are substantially similar in that both are handheld devices that can provide microcurrent or Red-Light Therapy treatments at home, they have the same attachments, are made the same way, have the same instructions, and the advertising of the devices is the same.

34.    The Trinity+ is advertised as a "Clinically-Proven At-Home Treatment - The TRINITY+ microcurrent skin tightening device with Red Light Wrinkle Reducer and Effective Lip & Eye Attachment uses the clinically proven benefits of microcurrent technology to provide a low-level electrical current, sending soft, gentle waves through the skin and down to the facial muscles.  This customizable

---

[27] *Nu Face Trinity Complete*, NᴜFᴀᴄᴇ, https://www.mynuface.com/collections/trinity-devices-sets/products/nuface-trinity-complete (last accessed Sept. 23, 2024) [hereinafter *Trinity Classic*].

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

treatment tones, lifts & tightens for instant & long-term results anytime, anywhere."[28]

35.     However, the Trinity Classic is also advertised as a "Clinically-Proven At-Home Treatment - The Trinity microcurrent device with Red Light Wrinkle Reducer and Effective Lip & Eye Attachment uses the clinically proven benefits of microcurrent technology to provide a low-level electrical current, sending soft, gentle waves through the skin and down to the facial muscles.  This customizable treatment tightens for instant & long-term results anytime, anywhere."[29]

36.     Furthermore, the Trinity+ is advertised as the "Must-Have Microcurrent Skincare - Activate & lift with our microcurrent activators that conduct the microcurrent from your NuFACE device down to your facial muscles.  Proprietary IonPlex Technology delivers a precise concentration of ions and glacial water that help to prepare skin for your microcurrent treatment.  The hydrating Aqua Gel locks in moisture for up to 24 hours and the firming & brightening Silk Crème hydrates skin with added anti-aging benefits."[30]

37.     But again, the Trinity Classic is also the "Must-Have Microcurrent Skincare - Activate with our microcurrent activators that conduct the microcurrent from your NuFACE device down to your facial muscles.  Proprietary IonPlex® Technology delivers a precise concentration of ions and glacial water that help to prepare skin for your microcurrent treatment.  The hydrating Aqua Gel locks in moisture for up to 24 hours and the firming & brightening Silk Crème hydrates skin with added anti-aging benefits."[31]

---

[28] *Trinity+*, *supra* note 3.

[29] *Trinity Classic*, *supra* note 27.

[30] *Trinity+*, *supra* note 3.

[31] *Trinity Classic*, *supra* note 27.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

38.     Similarly, the Trinity+ is advertised as having "Instant & Lasting On-The-Go Results - The sleek and portable design of your NuFACE TRINITY+ facial toning device makes it perfect for on-the-go lifting. Quick 5-minute sessions throughout the week help to sculpt and firm the face & neck, improve cheek contour, lift brows and smooth fine lines and wrinkles."[32]

39.     And once more, the Trinity Classic features identical language on the product page, as it is also advertised as providing "Instant & Lasting On-The-Go Results - The sleek and portable design of your NuFACE Trinity facial device makes it perfect for on-the-go.  Quick 5-minute sessions throughout the week help to sculpt and firm the face & neck and smooth fine lines."[33]

40.     Importantly, the consumer studies done by NuFACE that it boasts for its alleged "clinically proven claims" on both devices, were all done with the Trinity Classic Device.[34]

41.     In fact, the product pages on the NuFACE website are so identical that it is actually difficult to tell if there is any difference in the Products.  The only place on the NuFACE website that even highlights if and how the devices are different is in a NuFACE blog post that consumers have to specifically search for.[35]

42.     The only real difference between the Products is that the Trinity+ features a boost button that increases the microcurrent by 25%.[36]  However, the boost

---

[32] *Trinity+*, *supra* note 3.

[33] *Trinity Classic*, *supra* note 27.

[34] *See NuFACE Real Results: Before & After*, NUFACE, https://www.mynuface.com/blogs/results (last accessed Sept 23. 2024).

[35] *See Trinity+ PRO vs Trinity PRO: What's The Difference*, NUFACE (Jun. 27, 2023), https://www.mynuface.com/blogs/the-current/trinity-plus-pro-vs-trinity-pro#:~:text=The%20TRINITY+%20PRO%20is%20our,with%20exclusive%203%2DDDepth%20Technology.

[36] *Id.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

button "will not change the power of the Wrinkle Reducer Attachment"[37] and as such, will have no effect on the effectiveness of the red-light therapy.

43.    Moreover, even on third party retailer websites where the Devices are sold; such as Amazon, Sephora, or Nordstrom; the Devices feature identical or nearly identical advertising language as quoted above from the NuFACE website.[38]

44.    Finally, the Devices have the same use instructions.  To use, the consumer selects an area of their face and holds either a Trinity+ or Trinity Classic Device fitted with the Red-Light Attachment on an area of their face for three minutes.[39]  The face is split into seven different zones and this process is repeated for each zone.[40]

---

[37] *Trinity+*, *supra* note 3.

[38] *See Trinity+ Microcurrent Facial Device*, AMAZON, https://www.amazon.com/ NuFACE-Wrinkle-Reducer-Attachment-Wrinkles/dp/B0C54CRPWK/ref=sr_1_2 ?crid=2JEZ8580MCP4A&dib=eyJ2IjoiMSJ9.q0UYkDRV2EkuhRmnCVCaz53wyC zztzI5aAafA7X66hhmBZIPHS3WA_3fNaAn3VzGc2I8nBMRpEqNLdZx_g_yJklm qsXDOwOF9Py4qwKPZkkGvll3n8UHA7xKh8ZF2MPaSvYo_ZvIUvJ8fVHl504bX G0jqkSvGX3oRKsR5DaKXaUZRJ4FqmOT-xFnQz87BrLkcx1HG4Q5PJyk7Qpu6 UzECe-fZj81cwPT4cTHEK9NZDP9e74DWXt1myGePuSbJW9cb1xLaAF9jS6H_ 86AEMJHAyeQrdMeWmr27MXj6-Fur14.tnVOQX0om7HdEX5LrlkA4al-80B2LB 2sscpD4T4NxK0&dib_tag=se&keywords=trinity%2B%2Bwith%2Bred%2Blight&q id=1727113845&sprefix=trinity%2B%2Bwith%2Bred%2Blight%2Caps%2C180&sr =8-2&th=1 (last accessed Sept. 23, 2024) (featuring identical advertising language to that of the NuFACE website); *see also NuFACE Trinity FDA Cleared Microcurrent Facial Device and Wrinkle Reducer Attachment*, AMAZON, https://www.amazon.co m/dp/B0C59HH8QJ/ref=sspa_dk_detail_0?pd_rd_i=B0C59HH8QJ&pd_rd_w=VXz LX&content-id=amzn1.sym.e1bd46f6-106d-4001-8a1f-c5226d6c67ac&pf_rd_p=e1b d46f6-106d-4001-8a1f-c5226d6c67ac&pf_rd_r=VYQHNBC2602ZVZ2NYQ11&pd _rd_wg=6mrg7&pd_rd_r=e3af14ad-f262-48b3-ac80-64d0ed204612&s=beauty&sp _csd=d2lkZ2V0TmFtZT1zcF9kZXRhaWxfdGhlbWF0aWM&th=1 (last accessed Sept. 23, 2024) (featuring identical advertising to that of the NuFACE website).

[39] *See Trinity Wrinkle Reducer*, NUFACE, https://www.mynuface.com/blogs/how-to-use/trinity-wrinkle-reducer-treatment (last accessed Sept. 16, 2024).

[40] *See id.*

---

13

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

45.     As such, Defendant's website and advertising treats them as the same product.  Specifically, the Devices are made of the same materials, have the same attachments, share the same instructions for use,[41] and are advertised as promising the same results.  The only difference is that the attachments for the Trinity+ device connect to the main body magnetically and the Trinity+ device has a "boost button" that can increase the Device's microcurrent.  As such, each version of the Product is substantially similar.

### 2.    The Devices Are Incapable of Creating the Warranted Benefits

46.     By advertising the Products in the way that it does, Defendant promises consumers that use of the Devices will provide the Red Light Benefits and the Microcurrent Benefits.

47.     However, Defendant's Products are not capable of delivering the advertised results.  For red light therapy to be effective, the red wavelengths must be around 630 nm, the power density must be between 4 mW/cm$^2$ and 200 mW/cm$^2$, and the radiant exposure must be between 7 J/cm$^2$ and 126 J/cm$^2$.[42]

48.     Radiant exposure refers to the amount of energy and exposure a particular area receives from a light source for a particular duration of time.[43]  Here, that would be the amount of time that a particular area of the skin was exposed to red LED light.

49.     Independent testing shows that while the Trinity Classic does produce an adequate wavelength and power density (628.5 nm and 13.99 mW/cm$^2$ respectively) to provide some therapeutic skin care benefits, the radiant exposure as

---

[41] *See id.*; *see also Trinity+, supra* note 3.

[42] Pinar Avci et al., *Low-level Laser (light) Therapy (LLLT) in Skin: stimulating, healing, restoring*, NAT'L LIBR. OF MED. (Mar 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4126803/.

[43] *What is Radiant Exposure?*, AZO OPTICS (Aug. 14, 2014), https://www.azooptics.com/Article.aspx?ArticleID=812.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

instructed by the Device is insufficient at .25 J/cm$^2$.  This is 28 to 504 times lower than the effective doses in the literature.  As such, according to established scientific literature and the opinion of Plaintiff's expert, the red light feature provides no measurable skin care benefits to the user

50.    The Trinity+ device, being substantially similar, also suffers from this defect.

51.    Defendant warrants that the Products can produce Red Light Wavelengths of between 620 and 700 nm but does not mention the Products' power density or radiant exposure.

**What are the wavelengths or depth used?**

Our NuFACE Trinity® Wrinkle Reducer Attachment has a total of 36 lights; a proprietary blend of amber, red, and infrared LEDs.

The realm of these 3 light wavelengths sit within the following:

Red: 620 nm and 700 nm

Amber: 570 nm to 620 nm

NIR (near infrared): 700 and 1200 nm

***Figure 3*** [44]

52.    Additionally, Defendant advertises that the product delivers Microcurrent Benefits.

53.    However, after reviewing Defendant's 510(k) the scientific literature on microcurrent technology, and his own clinical use of such technology, Plaintiff's expert is of the opinion that the Device cannot possibly deliver the advertised Microcurrent Benefits.

54.    Furthermore, Defendant touts its FDA clearance for the Devices in its advertisements to induce consumers to purchase the Products.

55.    However, such representations are false and misleading because FDA clearance does not speak to product efficacy.  As 21 C.F.R. § 807.97 explains, "[a]ny

---

[44] *Trinity Classic*, *supra* note 27.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

representation that creates an impression of official approval of a device because of complying with the premarket notification regulations is misleading and constitutes misbranding."

56.    Moreover, Defendant markets its Devices as clinically proven but only provides consumer use studies on its website.[45]  While such studies may be appropriate to cite to for marketing claims, they are not randomized double-blind and placebo controlled scientific studies that can support a "clinically proven" claim.

57.    Finally, Defendant also attempts to inject credibility into its marketing campaign by representing to consumers that the Devices are trusted by many influencers.

    

*Figure 4* [46]

58.    As such, Defendant misled and deceived Plaintiff and the Class Members because, if they had known that the Devices were not actually able to provide the skin rejuvenation benefits that Defendant advertised, Plaintiff and the members of the Classes would not have purchased the Products or would have paid substantially less for them than they did.

---

[45] *See* NuFACE, *supra* note 34.

[46] NuFACE, https://www.mynuface.com/ (last accessed Sept. 17, 2024).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**CLASS ACTION ALLEGATIONS**

59.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

60.     Plaintiff seeks to represent a Nationwide class defined as:

All persons in the United States who, within the applicable statute of limitations period, purchased a Trinity+ or Trinity Classic Device and/or the accompanying red-light attachments (the "**Nationwide Class**").

61.     Plaintiff also seeks to represent a California Sub-class class defined as:

All persons in California, who within the applicable statute of limitations period, purchased a Trinity+ or Trinity Classic Device and/or the accompanying red-light attachments (the "**California Subclass**").

62.     Specifically excluded from the Classes are: Defendant; Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures; entities controlled by Defendant; Defendant's heirs, successors, assigns, or other person or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors; the Judge assigned to this action; any member of the Judge's family and staff; Defendant's counsel; and Plaintiff's counsel.

63.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Nationwide Class and California Subclass (collectively, the "Classes") may expand or narrow by amended complaint.

64.     **Numerosity.**  The Members of the Classes are so numerous that individual joinder of each member is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members of the Classes. Although the precise number of Class Members is unknown to Plaintiff at this time, it may be determined through discovery.

65.     **Commonality.**  Common questions of law and fact exist to all Members of the Classes and predominate over any questions affecting only individual

Nationwide Class or California Subclass Members.  The common legal and factual questions include, but are not limited to:

    a.  Whether Defendant made false and/or misleading statements to the public concerning the efficacy of the Devices;

    b.  Whether Defendant's Devices produce the required radiant exposure to produce the results Defendant warrants;

    c.  Whether the microcurrent features of the Devices are sufficient to produce the results Defendant warrants;

    d.  Whether Defendant omitted material information to the consuming public concerning the actual wrinkle-reducing and corrective capabilities of the Devices;

    e.  Whether Defendant's representations and partial representations were material to consumers;

    f.  Whether Defendant's omissions concerning the capabilities of the Devices were likely to deceive a reasonable consumer;

    g.  Whether Defendant advertised the Devices with the intent not to sell them as advertised;

    h.  Whether Defendant made and breached express and/or implied warranties to Plaintiff and the Classes concerning the Devices' capabilities;

    i.  Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and the Classes; and

    j.  Whether Plaintiff and the Classes are entitled to damages.

66.  **Typicality.**  Plaintiff's claims are typical of the claims of the Members of the Classes in that the Class Members were deceived, or reasonably likely to be deceived, in the same way by Defendant's false and misleading advertising Skin Claims of the Products.  All Class Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

67.  **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained counsel that is highly experienced in

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

68.    **Predominance.**  Pursuant to Federal Rule of Civil Procedure 23(b), the common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Classes.  Issues affecting the Nationwide Class and California Subclass fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

69.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would thus be virtually impossible for the members of the Classes to obtain effective redress on an individual basis for the wrongs committed against them.  Even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  A class action provides the benefits of adjudication of those issues on a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties.

## COUNT I
### Violation of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*
### (On Behalf of the California Subclass)

70.    Plaintiff hereby incorporates by reference and re-alleges herein the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

allegations contained in the preceding paragraphs of this complaint.

71. Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

72. Plaintiff and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's Devices, Plaintiff and the Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code § 1761(e) and 1770.

73. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c).  Defendant's Devices are a "good" within the meaning of Cal. Civ. Code § 1761(a).

74. Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Products.

75. As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and the California Subclass Members suffered injury and damages in an amount to be determined at trial.

76. Defendant violated California's Consumer Legal Remedies Act ("CLRA") by engaging in the following unfair and deceptive business practices as alleged above and herein:

    a. Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Devices have characteristics they do not have;

    b. Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Devices are of a particular standard and quality despite being of another; and

    c. Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Devices with the intent not to sell as advertised.

77. The CLRA was enacted to protect consumers against such practices. The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

78.    On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

79.    On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of misleading statements and material omissions regarding the Products' purported benefits as alleged herein.

80.    On July 15, 2024, prior to the filing of this complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant has not taken corrective action.

81.    Plaintiff and California Subclass Members seek actual and punitive damages, restitution, reasonable costs and attorney's fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

## COUNT II
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of the California Subclass)

82.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

83.    Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

84.    Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 – 17210, by engaging in unfair, fraudulent, and unlawful business practices.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

85.    Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct.  Specifically, Plaintiff purchased her Product for her own personal use.  In doing so, Plaintiff relied upon Defendant's false representations that the Product could provide the Skin Claims.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

### *"Unfair" Prong of the UCL*

86.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm alleged.

87.    Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant engaged, and continues to engage in, false, misleading, and deceptive advertising campaigns that mislead consumers into believing that the Products they purchased will provide the Skin Claims despite not being able to do so.

88.    Defendant's conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize its revenue and the expense of consumers who sought skin regenerative benefits.  No legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendant's conduct on members of the general consuming public.  Defendant engaged, and continues to engage, in such conduct solely to wrongfully extract monies from reasonable consumers seeking the Skin Claims, including Plaintiff, to which Defendant is not entitled.  Defendant could have, but has not, used alternative means of effecting its legitimate business needs, such as by properly disclosing the radiant exposure requirements, as well as by omitting the Skin Claims entirely or discounting the Devices to appropriately account for the Products' functionality.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

89.   Defendant's conduct harms consumers and hurts market competition. Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Members of the California Subclass because it violates consumers' reasonable expectations.  If Defendant had advertised its Devices in a non-misleading fashion, Plaintiff and other California Subclass Members could have considered other options for purchasing red light therapy devices.

***"Fraudulent" Prong of the UCL***

90.   A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

91.   Defendant has engaged in, and continues to engage, in, fraudulent business practices by knowingly representing to consumers that the Devices they purchase will provide them with skin-regenerative benefits when they do not. Defendant's conduct deceived Plaintiff and California Subclass Members who purchased the Devices in reliance on Defendant's Skin Claims and is highly likely to deceive members of the consuming public because, as alleged above, the Devices violate consumers' reasonable expectations regarding skin rejuvenation.  Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of its customers.  The gravity of the harm to Plaintiff and other California Subclass Members, who lost money or property by paying for the Devices, far outweighs the benefit to Defendant's conduct.

92.   Further, Defendant's fraudulent business practices will continue to mislead consumers because it will be impossible for consumers to know whether Defendant has stopped misrepresenting the functionality of the Products as they concern their purported skin benefits.  Accordingly, the risk of harm to Plaintiff, members of the California Subclass, and the consuming public, is ongoing.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

***"Unlawful" Prong of the UCL***

93.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

94.    Defendant's business practices as alleged herein constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").  Specifically, Defendant has unlawfully marketed and advertised its Products in violation of Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9), as detailed above.

95.    Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* (the "FAL"), as described below, and provisions of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

**96.**    Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above and below, were the direct and proximate cause of financial injury to Plaintiff and other members of the California Subclass.  Defendant has unjustly benefited as a result of its wrongful conduct.  Accordingly, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and the California Subclass; (b) disgorge all revenues obtained as a result of its violations of the UCL; (c); and pay attorneys' fees and costs for Plaintiff and the California Subclass.

### COUNT III
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf of the California Subclass)**

97.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

98.    Plaintiff brings this claim individually and on behalf of the California Subclass Members against Defendant.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

99.    Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500, *et. seq.,* by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding its Products, as alleged above and herein.

100.    Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and has lost money or property because of Defendant's false advertising.  Specifically, Plaintiff purchased her Product for her own personal use.  In so doing, Plaintiff relied on Defendant's false and misleading representations regarding the Product's capability to deliver wrinkle reducing and other skin rejuvenation claims.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's claims.

101.    Defendant disseminated false and misleading advertisements to increase the sales of the Products.

102.    Defendant knew or should have known that the advertisements for its Products were false and/or misleading.

103.    Defendant knew or should have known that consumers, including Plaintiff and other members of the California Subclass, would believe that the Products were capable of providing the promised skin rejuvenation benefits.

104.    Plaintiff and the California Subclass Members have suffered harm as a result of Defendant's violations of the FAL because they paid monies for the Products that they would not have purchased but for Defendant's false and misleading advertisements.

105.    Accordingly, Plaintiff and members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution of Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class and California Subclass)**

106.   Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

107.   Plaintiff brings this action individually and on behalf of Members of the Nationwide Class and California Subclass against Defendant.

108.   Plaintiff brings this claim under the laws of the State of California.

109.   As the designer, manufacturer, marketer, distributor, and/or seller of the Products, Defendant issued an express warranty by representing to consumers that the Products would provide the Skin Claims when the Devices are unable to because they do not possess the radiant exposure and other technological capacities necessary to produce such results.

110.   Defendant's representations were part of the basis of the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Classes.

111.   As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they: (1) paid money for the Devices that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Devices they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Devices they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and the Nationwide Class and California Subclass Members would not have purchased the Devices or would not have paid as much as they did for them.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## COUNT V
### Breach of Implied Warranty
### (On Behalf of the Nationwide Class and California Subclass)

112.   Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

113.   Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Subclass.

114.   Plaintiff brings this claim under the laws of the State of California.

115.   Defendant routinely engages in the manufacture, distribution, and/or sale of the Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

116.   Plaintiff and Members of the Nationwide Class and California Subclass were consumers who purchased Defendant's Products for the ordinary purpose of such products.  In the alternative, Defendant marketed the Products, and Plaintiff and Members of the Classes purchased the Products, for the specific purpose of using the LED Red Light therapy and microcurrent technology but received far less because the Products are incapable of providing the Skin Claims.

117.   By representing that the Products would work, Defendant impliedly warranted to consumers that the Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

118.   However, the Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

119.   As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

paid money for the Products that would not pass without objection in the trade or industry under the contract description.

## COUNT VI
### Unjust Enrichment
### (On Behalf of the Nationwide Class and California Subclass)

120.   Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of the complaint.

121.   Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

122.   Plaintiff brings this claim under the laws of the State of California.

123.   To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted by Fed. R. Civ. P. 8.

124.   Plaintiff and the Nationwide Class and California Subclass Members conferred benefits on Defendant by purchasing the Products.

125.   Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Members of the Classes who purchased the Products.  Retention of these monies under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were not capable of producing the Skin Claims promised because the Devices do not operate with the required radiant exposure or microcurrent technology in order to produce such results, rending the Products unfit for their intended, marketed purpose.  Those omissions caused injuries to Plaintiff and members of the Classes because they would not have purchased the Products had they known the true capabilities of the Products.

126.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the members of the Classes is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order Certifying the Nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and California Subclass;

(b)    Appointing Plaintiff's counsel to represent the Nationwide Class and California Subclass;

(c)    Declaring that Defendant's conduct violated the statutes and common law referenced herein;

(d)    Finding in favor of Plaintiff, the Nationwide Class, and California Subclass against Defendant on all counts asserted herein;

(e)    Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

(f)    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing their unlawful practices as set forth herein, directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

(g)    Awarding Plaintiff, the Nationwide Class, and California Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees.

(h)    Ordering Defendant to pay pre-judgment interest on all amounts awarded; and

(i)    Providing such further relief as may be just and proper.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated:  October 18, 2024          **BURSOR & FISHER, P.A**.

By: _____*/s/ L. Timothy Fisher*_____

L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
Joshua R. Wilner (State Bar No. 353949)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jgavenman@bursor.com
          jwilner@bursor.com
          jglatt@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail:  greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff. Plaintiff Onika Chambers is a citizen of California residing in Sacramento, California. I have personal knowledge of the facts set forth in this declaration and as called as a witness, I could and would completely testify thereto under oath.

2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Southern District of California, as Defendant is headquartered in this District. Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Class Members in this District.

3.    I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed in Walnut Creek, California this October 18, 2024.

*/s/ L. Timothy Fisher*
L. Timothy Fisher

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED